**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jon Randolph FLOYD et al., Defendants-Appellants.**

**Nos. 72-1741 to 72-1752.**

United States Court of Appeals,
Tenth Circuit.

April 13, 1973.

Rehearing Denied May 31, 1973.

Jerry Cord Wilson, Asst. U. S. Atty., Oklahoma City, Okl. (William R. Burkett, U. S. Atty., Oklahoma City, Okl., on the brief), for appellee.

Stephen Jones, Enid, Okl. (Eric J. Groves, Oklahoma City, Okl., and Charles F. Cox, Norman, Okl., on the brief), for appellants.

Melvin L. Wulf and John H. F. Shattuck, New York City, for American Civil Liberties Union Foundation, amicus curiae.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

The appellants were convicted of going upon Tinker Air Force Base military reservation for the purpose of violating a lawful regulation prohibiting their entry without the permission of the commanding officer in violation of 18 U.S.C.A. § 1382. Section 1382 carries a fine of not more than $500 or imprisonment of not more than six months, or both.

On May 4, 1972 the appellants and 75 to 200 others gathered at Gate Two at Tinker Air Force Base in Oklahoma City, Oklahoma to protest the war in Vietnam. A group of between 30 and 40 people crossed the "white line" signifying entrance to the base. They were met by Lt. Col. George Malone who read them the following statement:

> THE INSTALLATION COMMANDER, COL. JOHN C. HOLLEY, UNITED STATES AIR FORCE, DENIES YOU PERMISSION TO ENER THIS MILITARY INSTALLATION OR TO BE PHYSICALLY PRESENT ON ITS PROPERTY.

> YOU ARE TRESPASSING ON A MILITARY INSTALLATION OF THE UNITED STATES. BY ORDER OF THE INSTALLATION COMMANDER YOU WILL IMMEDIATELY REMOVE YOURSELVES FROM THIS MILITARY INSTALLATION. IF YOU DO NOT IMMEDIATELY COMPLY, YOU WILL BE ARRESTED AND PROSECUTED BY THE FEDERAL AUTHORITIES. YOU ARE ADVISED THAT PURSUANT TO TITLE 18 USC 1382, "WHOEVER, WITHIN THE JURISDICTION OF THE UNITED STATES, GOES UPON ANY MILITARY, NAVAL, OR COAST GUARD RESERVATION, POST, FORT, ARSENAL, YARD, STATION, OR INSTALLATION, FOR ANY PURPOSE PROHIBITED BY LAW OR LAWFUL REGULATION . . . SHALL BE FINED NOT MORE THAN $500 OR IMPRISONED NOT

MORE THAN SIX MONTHS, OR BOTH." (R., Vol. II, p. 212)

The Appellant Flower then read a statement to Col. Malone. The group was asked to leave; instead, they sat down in the middle of the street and refused to leave. They were next placed on a bus and taken to Security Police Headquarters where they were photographed.

Tinker Air Force Base is one of the nation's largest military installations, with thousands of civilian employees. Reports had been received by the Base Commander several days before the gathering that a demonstration against the Vietnam War was going to be held on the base.

Some of the appellants plead guilty; others were tried by the Magistrate. These 12 appellants were tried by the U. S. District Court.

Air Force Regulation 125–37 was promulgated on July 27, 1964 by then Air Force Chief of Staff General Curtis E. LeMay. It established procedures to protect Air Force physical resources. Regulation 125–37 was revised and supplemented several times thereafter. On May 3, 1972 Col. John C. Holley, then Commander of Tinker Air Force Base, supplemented AFR 125–37 by the promulgation of OCAMA–TAFB Supplement 2 which effectively precluded the demonstrators from entrance because they did not qualify as "visitors". See United States v. Vaughan, 475 F.2d 1262 (10th Cir. 1973). The appellants were convicted under § 1382 of violating Supplement 2.[1]

The appellants contend that: (1) the trial court erred in denying them a jury trial; (2) Supplement 2 is void and violates the due process clause; (3) the trial court penalized them for standing trial; and (4) the trial court erred in overruling their motion for judgment of acquittal.

I.

The appellants contend that they were entitled to a trial by jury because of the seriousness with which a violation of § 1382 is regarded by the community. The District Court ruled against them in United States v. Floyd, 345 F.Supp. 283 (W.D.Okla.1972), holding that a violation of § 1382 is a petty offense which does not entitle the defendants to a jury trial, and further that Article III, Section 2, Clause 3 and the Sixth Amendment of the United States Constitution do not extend to petty offenses. A petty offense is defined in 18 U.S.C.A. § 1(3) as: "Any misde-

---

1. Supplement 2 reads in part as follows: AFR 125–37, 27 July 1964, is supplemented as follows:

6b.1 ENTRY CONTROL PROCEDURES FOR TINKER AIR BASE:

a. This supplement applies to members of the general public as well as Air Force personnel. Personnel with identification other than those identified in b, c and d below are prohibited from entering into Tinker Air Force Base.

b. The following personnel identification will be recognized at all perimeter gates for base admittance: . . .

c. Subject to the security requirements as determined by the installation commander, the following personal identification may be recognized at Gates 1 and 2 for base admittance: . . .

d. Subject to security requirements as determined by the installation commander, personnel with identification other than those described in 6b and c above may be authorized admittance to Tinker Air Force Base under the following procedures:

(1) Visitors desiring admittance to Tinker Air Force Base must state the nature of their visit and the person or activity to be visited, to Security Police Division personnel.

(a) Statements submitted in accordance with 6b.1d(1) above will be verified by Security Police personnel prior to the issuance of identification or an admittance to base.

(b) Monitors for major staff offices, OCAMA, and tenant organizations are authorized to verify visitor's admittance statements to Security Police Division. Military personnel may verify individual guests as authorized by 6b.1(d)(2) below.

(c) Upon verification visitors will be issued proper identification.

(OCAMA–TAFB, Supplement 2, AFR 125–37, 3 May 1972)

meanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both . . ." If an offense is *malum in se* it may be serious enough to require a jury trial even though it qualifies as a petty offense. District of Columbia v. Colts, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930). The offense here is *malum prohibitum*. Congress has not been silent on this subject as the appellants suggest. It has intended that there be no jury trial for a petty offense. 18 U.S.C.A. § 1(3). If the offense is a petty offense within 18 U.S.C.A. § 1(3) and is not otherwise a serious offense under prior U.S. Supreme Court decisions then a jury trial is not required. Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). The reasoning of the District Court is sound. The evidence supports its holding. See United States v. Floyd, *supra*. The violation of Section 1382 here involved constitutes a petty offense not requiring a trial by jury.

## II.

The appellants allege that TAFB–OCAMA Supplement 2 to AFR 125–37 is void because it was never lawfully adopted. They also contend that Supplement 2 violates the due process clause because it established only policies which cannot be criminally violated and that it is void for vagueness because it failed to announce the acts it forbids.

The appellants argue that Supplement 2 is void because it was not promulgated in compliance with the Federal Register Act, 44 U.S.C.A. § 1501 et seq. and the Administrative Procedure Act, 5 U.S.C.A. § 500 et seq.

We hold that there is no merit in this argument. Both are, in effect, "notice" statutes intended to protect persons who have no *actual notice* from in any manner being adversely affected. It is unrealistic to contend that "closed base" commanders charged with the obligation of protecting the national security thereon, cannot adopt regulations effective immediately, even if only orally communicated to the base security personnel, so long as such regulations are thereafter communicated to one who wishes to enter upon the base. Neither the Federal Register Act nor the A.P.A. require publication of Supplement 2 on the facts of this case. In recognition of the needs involving national security, we recently held that once one is within an area where base security is imposed, a search may be conducted without probable cause, and without consent. United States v. Vaughn, *supra*.

The appellants contend that Supplement 2 is void because it was issued in direct violation of the controlling regulation it supplements, AFR 125–37. Paragraph 2 of AFR 125–37 provides in part as follows:

> Further, the on-base violation of a lawful regulation issued by a base commander may be sufficient to sustain the removal from the base of a person not subject to the UCMJ and to sustain a criminal prosecution of such a person for an unauthorized re-entry of the base under 18 USC 1382 even though the base regulation may not have been issued pursuant to 50 USC 797.

(Para. 2, AFR 125–37, 27 July 1964)

Paragraph 4 [2] of 125–37 announces mandatory steps which must be taken for

**2.** In general, to have legal effect for various categories of persons, any directive or regulation applying to the protection of USAF physical resources should meet the following requirements:

  a. For persons subject to the UCMJ, it must:

  (1) Be issued by order of the base commander. At bases utilizing civilian contractor guards, the authority to issue such directives *cannot* be delegated to the civilian contractor.

  (2) Clearly describe, identify, and locate the property or area.

  (3) State that specific permission of the commander is required to enter or use the particular area or resource.

  (4) Be posted or otherwise displayed to insure that the individual has constructive or actual knowledge of the directive.

subordinate regulations to have legal effect. The requirements in paragraph 4 generally pertain to prosecutions of offenses arising under 50 U.S.C.A. § 797 and the offense of re-entry after removal under 18 U.S.C.A. § 1382. The appellants were not charged with the crime which the regulation defines. It is within the sole discretion of the commanding officer of a "closed base" to promulgate rational regulations excluding people from the military installation in the interest of the national security. He has practically exclusive and extensive power to exclude persons from the base in the interest of good order and military discipline. Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); McQueary v. Laird, 449 F.2d 608 (10th Cir. 1971).

■ The 4th Circuit recently held in Burnett v. Tolson, 474 F.2d 877 (4th Cir. 1973), that where military reservations are open to the public it is now clear that civilians have an unqualified right to enter these public areas to exercise their constitutional right to freedom of expression. Where the area is open to the public the base commander has no discretion but has a ministerial duty to allow leafletting. However, when the military reservation is a "closed base",[3] the base commander

at Tinker had the authority to determine the degree of control over personnel entering or leaving the base. Para. 6b, AFR 125-37, 27 July 1964.

■ The appellants challenge whether posting a sign outside the confines of Tinker Air Force Base sufficiently conveys actual notice of Supplement 2. The large sign reads as follows:

### WARNING
### U.S. AIR FORCE BASE
IT IS UNLAWFUL TO ENTER THIS AREA WITHOUT PERMISSION OF THE COMMANDER TINKER AIR FORCE BASE WHILE ON THIS INSTALLATION ALL PERSONNEL AND THE PROPERTY UNDER THEIR CONTROL ARE SUBJECT TO SEARCH

(Sec. 21, Internal Securities Act of 1950: 50 U.S.C. 797)

To be sure, the sign does not convey actual notice of the entire content of Supplement 2. It was not, however, the only notice that the appellants had that Tinker Air Force Base was a controlled entry installation. They were warned by the sign, the five security guards, and the fence around the installation. In any event there can be no question that the sign and the security guards

---

b. For persons not subject to the UCMJ, to sustain removal and order not to re-enter under 18 USC 1382, it must:

(1) Meet the requirements stated in a (1) through (3) above.

(2) Direct removal and forbid re-entry, in the name of the base commander.

c. For all persons within the US, its territories and possessions, it must:

(1) Meet the requirements stated in a (1) through (3) above.

(2) Have been issued by a person designated in DOD Directive 5200.8.

(3) Be posted in a conspicuous and appropriate place. For standardization, the display of such a directive at gates of bases or areas will satisfy this requirement.

(4) Pertain to one of the subjects listed in 50 USC 797.

(5) State that it was issued under the DOD directive and the statute. The

notice to the public incident to the issue of the regulation must also contain the same statement.

(6) Cover a physical area that is subject to USAF jurisdiction, administration or custody.

(Para. 4, AFR 125-37, 27 July 1964)

3. *Closed Base.* It will be:

(a) Posted with warning signs at all perimeter gates and along the base perimeter.

(b) Patrolled internally by air police forces in vehicles. Air police forces will be assigned at perimeter gates, when open, to control personnel and vehicle traffic.

(c) Fenced around the perimeter, when practicable.

(Paragraph 6(a)(1), AFR 125-37, 27 July 1964)

gave the appellants *actual notice* that they could enter *only* with the permission of the base commander. The record is clear that they were informed of his denial of their right of entrance before they entered the base.

The appellants argue that Supplement 2 violates the due process clause of the Fifth Amendment to the United States Constitution in that it is void for vagueness, and that it establishes guidelines only, thereby lacking the sufficient enjoinder required of prohibitive regulations.

AFR 125–37 grants the base commander the authority to determine the security to be imposed on personnel entering or leaving the base. Paragraph 6b, AFR 125–37, 27 July 1964. Pursuant thereto the Base Commander promulgated Supplement 2 on May 3, 1972. Twenty-five copies of Supplement 2 were sent to the security guards at the gates. The procedures set forth in Supplement 2 prohibit all persons who do not possess proper identification from entering the base. The language is plain. Those who have proper identification may enter the base and those who do not have such identification may not enter the base. Courts do not require the same precision and specificity of standards in military regulations as in criminal statutes. Dash v. Commanding General, Fort Jackson, South Carolina, 307 F.Supp. 849 (D.S.C.1969), aff'd, 429 F.2d 427 (4th Cir. 1970), cert. denied 401 U.S. 981, 91 S.Ct. 1192, 28 L.Ed.2d 333 (1971). We agree with the District Court which stated:

> It is not significant or prejudicial to the Defendants that the Information describes the regulation as one prohibiting the entry upon the military reservation "without the consent or permission of the Commanding Officer," rather than "without proper identification." Such language is merely descriptive of the regulations, which speaks for itself. The important fact is that the regulation prohibited entry to certain persons. It becomes a matter of proof as to whether the Defendants were such persons and intended to enter the base knowing that they were so prohibited. (R., Vol. I, pp. 130, 131)

### III.

The appellants allege that the trial court penalized them for exercising their right to stand trial in the District Court. Those who pleaded guilty before the Magistrate were given suspended sentences except for one defendant who received a one-year probation. Those who pleaded not guilty and who were tried by the Magistrate received suspended sentences except for one defendant who received a two-year probation. Of the twelve defendants who were tried in the District Court, the women received probationary terms, while the men received prison terms of from 4 to 6 months plus varying fines.

In United States v. Wiley, 278 F.2d 500 (7th Cir. 1960), the Court held that a person may not be punished because he has, in good faith, exercised his right to stand trial, even though his effort proves unsuccessful, and that it is improper to make his sentence more severe because he has done so. There is no evidence in the record to support the application of this rule to these appellants. We have held and now hold that when the sentence is within the limit prescribed by the statute, the length of the sentence imposed is within the discretion of the trial court and will not be disturbed by the reviewing court. United States v. Stidham, 459 F.2d 297 (10th Cir. 1972), cert. denied 409 U.S. 868, 93 S.Ct. 168, 34 L.Ed.2d 118 (1972); Andrus v. Turner, 421 F.2d 290 (10th Cir. 1970); Martin v. United States, 364 F.2d 894 (10th Cir. 1966). The sentences imposed on the appellants were within the statutory limits.

### IV.

The appellants contend that the trial court erred in overruling their motion for judgment of acquittal because the Government failed to prove each essen-

tial element of the crime beyond a reasonable doubt.

On appeal the evidence is considered in the light most favorable to the Government. United States v. Weiss, 431 F.2d 1402 (10th Cir. 1970). Although the Government conceded that the identification procedure in the early part of the trial did not clearly reflect the names of the appellants, the trial court had an opportunity to observe those persons who were identified during the trial. There was no error.

The appellants contend that the motion for a judgment of acquittal should have been granted because the Government presented no evidence of their purpose or intent to enter the Base without permission of the Base Commander. Intent and purpose may be inferred from the facts and circumstances surrounding the case which reasonably tends to demonstrate mental attitude. United States v. Woodring, 464 F.2d 1248 (10th Cir. 1972); Cummings v. United States, 289 F.2d 904 (10th Cir. 1961), cert. denied 368 U.S. 850, 82 S.Ct. 83, 7 L.Ed.2d 48 (1961). The warning sign posted at the entrance to the Base just north of Gate Two was visible to anyone who walked or drove onto the base. It states that permission to enter is required. The closed Base, evidenced by the guards, the warning sign, and the fence, gave due notice and warning to the demonstrators that they were approaching a military installation involving the national security. Officer Twomey attempted to hold the group back. He told them that they were not allowed on the Base unless they had permission of the Base Commander. Appellant Tom Flowers asked Officer Maddox what would happen if they crossed the "white line". He was told they would be arrested. Upon entering Col. Malone told them to leave. He read them the warning. In lieu of obeying, they sat down and refused to leave. They carried placards protesting the war in Vietnam. Their intent to enter the base without permission and their intent to

demonstrate against the Vietnam war on the Base may be reasonably inferred from these facts.

The appellants allege that the Government failed to prove the location and jurisdiction of the Court beyond a reasonable doubt. This contention has no merit. The trial court properly took judicial notice that Tinker Air Force Base is within the Western District of Oklahoma. United States v. Carter, 430 F.2d 1278 (10th Cir. 1970). The trial court did not err in denying their motion for judgment of acquittal.

Affirmed.