**UNITED STATES of America, Plaintiff,**

v.

**Antulio Parrilla BONILLA, Defendant.**

**Crim. No. 79-153.**

United States District Court,
D. Puerto Rico.

Aug. 29, 1980.

José A. Quiles, Asst. U. S. Atty., Hato Rey, P. R., for plaintiff.

Juan Mari Bras, Río Piedras, P. R., for defendant.

## DECISION AND ORDER

TORRUELLA, District Judge.

This case is before us pursuant to an Order of the Court of Appeals entered June 20, 1980 remanding this matter "for the purpose of ruling on . . . [Defendant's] Motion for a new trial." See also: *United States v. Antulio Parrilla Bonilla*, 626 F.2d 177 at 178 (1st Cir. 1980).[1]

**1.** A thorough search of the file and docket of this case fails to reveal any motion so–captioned. In addition to the Court of Appeals, both the Government (see "Memorandum of Law In Opposition To Motion For New Trial", filed July 18, 1980) and Defendant (see "Motion Requesting Consolidation", filed July 21, 1980), at various times make reference to a "Motion for new trial." It is obvious from the text of *Parrila Bonilla*, supra, that in speaking about a "motion for new trial" the Court of Appeals was referring to Defendant's Motion For Dismissal of All Charges Against Defendants" filed before this Court on March 21, 1980. In this Motion we find that Defendant relies on Rules 33 and 12(b)(1) and (2) and 16 of the Federal Rules of Criminal Procedure.

Rules 12(b)(1) and (2), which deal with *pretrial* motions, and Rule 16, which is concerned with *pretrial* discovery of a limited nature, are clearly inapposite to the present matter.

Only Rule 33, which makes reference to motions for new trial is of any relevance to this controversy. We thus limit our perusal of Defendant's "Motion For Dismissal, etc." pursuant to the standards for a motion under Rule 33 and will treat the same as the "motion for new trial."

In an apparent afterthought, Defendant in its "Supplemental Memorandum In Support of Dismissal of All Charges" requests treatment under 28 U.S.C. § 2255. We find this request to be inappropriate, considering the limited nature of this remand (Cf. *United States v. Davis*, 604 F.2d 474, 484 (C.A. 7, 1979), and the fact that Defendant is not in custody nor has he begun serving his sentence. *Heflin v. United States*, 358 U.S. 415, 418, 79 S.Ct. 451, 453, 3 L.Ed.2d 407 (1958).

One last point. Although this Court, in its "Decision and Order" entered April 2, 1980 (dealing with a "Motion for Disqualification"), concluded that "we [were] predisposed to grant a hearing on the merits of the Motion to Dismiss", we are presently of the view that, for the reasons stated hereafter in the body of this opinion, an evidentiary hearing is not required. We have before us all the relevant matters in the record of this case, including the briefs and accompanying affidavits and exhibits of the parties. See *United States v. Wright*, 625 F.2d 1017 (1980). This, of course, also makes moot the issues related to the discovery requested by Defendant, which in any event, he is not entitled to.

Rule 33 of the Federal Rules of Criminal Procedure reads as follows:

"The Court on motion of defendant may grant a new trial to him if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7–day period."

The nature of Defendant's Motion to Dismiss within Rule 33 is clearly apparent from its content. Paragraph 2 of the affidavit in support of this Motion indicates that it "concerns newly–discovered evidence which could not have been discovered by trial counsel acting with due diligence."

These allegations relate to the indictment in January 1980 of one of the Government's witnesses in the present case, Navy Lieutenant Alex de la Zerda, for allegedly stealing government owned explosives, and for conspiring to bomb the Colegio de Abogados de Puerto Rico with an object "to threaten, intimidate and injure members of the Vieques Fishermen's Association of the Commonwealth of Puerto Rico, members of the Bar Association, members of Legal Services, Inc. of Puerto Rico, and others because of past or future support for demonstrations in opposition to the Navy's use of the Island of Vieques as a gunnery range." See *United States v. De la Zerda et al.*, 500 F.Supp. 301. Defendant contends that this charge, together with related evidence uncovered by the Government in the investigation of that case, put at issue the motives, bias and credibility of that witness when he testified at the present trial of Defendant

for trespassing on the Navy's gunnery range in Vieques. It is claimed that "De la Zerda's involvement in the conspiracy totally discredits his testimony at trial, pollutes the waters of justice" and requires the setting aside of Defendant's conviction.

Although we note for purposes of the record that on July 9, 1980 a jury found Lt. De la Zerda and his alleged coconspirators not guilty of all charges, we shall not in *any* way consider said fact of any relevance to our conclusions in the present matter.

We start out with the proposition that a motion for new trial on the grounds of newly discovered evidence is not favored by the courts and should be viewed with great caution. *United States v. Plum*, 558 F.2d 568 (C.A. 10, 1977); *United States v. Lombardozzi*, 343 F.2d 127, 128 (C.A. 2, 1965), cert. den. 381 U.S. 938, 85 S.Ct. 1771, 14 L.Ed.2d 702 (1935); *United States v. Costello*, 255 F.2d 876, 879 (C.A. 2, 1958), cert. den. 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958); *Weiss v. United States*, 122 F.2d 675, 691 (C.A. 5, 1941), cert. den. 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1941). This has led to the development of exacting standards which must be met by movants. They include that: "(1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the Defendants; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of the defendant." *United States v. Wright*, supra, at page 1018; *Pelegrina v. United States*, 601 F.2d 18, 20–21 (C.A. 1, 1979); cf. *Berry v. State*, 10 Ga. 511, 527 (1851). Where the motion for new trial is based on an allegation that a material witness testified falsely at trial, a less stringent test than that of "probability–of–reversal" is applied, and in its stead the so–called *Larrison* rule is used, which only requires that the court be "reasonably well satisfied" that the testimony was false, and that without the false testimony the jury "*might*

have reached a different conclusion", *Larrison v. United States*, 24 F.2d 82, 87 (C.A. 7, 1928); *United States v. Wright*, supra, at page 1020 (emphasis in the original). "The threshold for granting a new trial under *Larrison* is that the trial judge be satisfied that the testimony was perjured." *United States v. Wright*, supra.

■ Let us look at the facts of this case within this legal framework.

In our Decision and Order of April 2, 1980 previously referred to, we rely on the grounds stated for seeking remand in our ruling of that same day in *United States v. Berkan*, 502 F.Supp. 25, as supportive of similar action in this case. In *Berkan*, "the Court accept[ed] that the witness whose testimony and motive are now being attacked was given credence and his testimony was used in findings of fact against the Defendant." See page 29 of Decision and Order entered April 2, 1980 in Criminal Number 79–152.

The Findings of Fact and Conclusions of Law, entered on August 18, 1979 by the Court, on the merits of the charges against Defendant, are thus our reference point.

In this respect we first look at the testimony of another witness:

"Lt. Sarah Moye, United States Navy, testified that as a regular course of business, a notice of the United States Navy maneuvers which will take place on Vieques is prepared by her. The purpose of said notice is to let fishermen, boaters, or anyone interested, know when to remain clear of the portions of Vieques that the United States Navy is using for the purpose of conducting maneuvers. Ms. Moye further testified that a set of the notices are sent by helicopter to Camp Garcia Annex in Vieques for distribution. Other notices are sent to the Island of Culebra, and to the Fajardo Ports Authority. In total approximately 67 Spanish notices are sent out and 16 English ones. A copy of a map of the Island of Vieques with the different zones is included with the notice."

Ms. Moye further testified that there were a series of signs on the beach and some offshore. She testified that these signs posted the beach area in question as a restricted area.... The signs are reminders that while on the property in question, visiting individuals are guests of the United States Navy."

Lt. De la Zerda's contribution to this case came next:

"Lt. Alex de la Zerda testified that upon receipt of the notices, one was posted on the main gate of Camp García, one on the Post Office, he kept one on his person for ready reference, one to a place of business across from the cemetery, one to the Fishermen's Association and one to the representatives of the North Fishermen's Association.

Mr. De la Zerda testified that Camp García is separated from the civilian side of Vieques by a fence that runs from the north to the south coast of Vieques and that the fence extends into the sea. The entrance to Camp García is a road with a guard house on its center. On either side of the guard house are two gates made out of steel tubing with stop signs on it. The guard house is manned on a 24–hour basis. In addition, there are several other guards that patrol the rest of the base on motor vehicles. Included in the areas of these patrols is Blue Beach."

Lt. De la Zerda was subjected to considerable cross–examination and voir dire.

Defendant was identified as within the prescribed zone by witnesses other than Lt. De la Zerda.

The relevance of Lt. De la Zerda's testimony relates to Defendant's contentions of lack of notice that Camp García was a "closed" base within the meaning of *United*

*States v. Floyd*, 477 F.2d 217, 222 (C.A. 10, 1973).

In his contentions regarding Lt. De la Zerda's actions in the alleged conspiracy case, Defendant does not specifically claim that his testimony in the present case was perjured, although in a "Supplemental Memorandum, etc." there are some vague references to his "bias and motives for testifying falsely." We also note that equally vague contentions of "misconduct by a government representative" are totally unsubstantiated as regards any true government representative, such as the prosecution.

In our opinion, even assuming that Defendant makes a clear claim of perjury by Lt. De la Zerda, we are far from satisfied, much less "reasonably well satisfied", that the testimony was false or that a different outcome might have been reached absent his testimony. The testimony of Lt. De la Zerda was uncontroverted in any manner, although given the nature of the same, it could easily have been challenged by any number of witnesses from Vieques, if in fact his testimony was untruthful. When seen within the context of the other evidence in this case, including that of Lt. Moye and Lt. Comdr. Samuel Meiss, the fact that Defendant passed through an amphibious landing fleet to land at Blue Beach in the midst of this operation, and the notoriety of the Vieques situation in general, we cannot but conclude that in this case Lt. De la Zerda's testimony was truthful, irrespective of any other activities that he may have allegedly been engaged in.

We should note that the possibility of Lt. De la Zerda's bias and prejudice against Defendant and other so–called Vieques protestors and accessories is certainly no news to this Court. We are not so naive as to believe that a person so intimately related to the Vieques Range as Lt. De la Zerda would not be unsympathetic towards Defendant, even without his engaging in the activities for which he was charged. But this is something the Court already had in mind and weighed in evaluating the testimony of Lt. De la Zerda, and other similarly situated witnesses, in the context of all the evidence presented, even before the so–called newly discovered evidence came to light. Thus, a new trial for the purpose of attempting to impeach his testimony with this "new evidence" serves no purpose.

Concluding that Lt. De la Zerda's testimony in this case was truthful and that a different outcome would not prevail, we are thus constrained to DENY Defendant's Motion for new trial.

IT IS SO ORDERED.