PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

v.

ELIAZER MADRIGAL-VALADEZ,

        *Defendant-Appellant.*

No. 07-4681

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Henry E. Hudson, District Judge.
(3:07-cr-00199-HEH)

Argued: January 29, 2009

Decided: April 1, 2009

Before GREGORY and DUNCAN, Circuit Judges, and
Arthur L. ALARCÓN, Senior Circuit Judge of the United
States Court of Appeals for the Ninth Circuit, sitting by
designation.

Reversed by published opinion. Senior Judge Alarcón wrote
the opinion, in which Judge Gregory and Judge Duncan con-
curred.

## COUNSEL

**ARGUED:** Mary Elizabeth Maguire, OFFICE OF THE FED-
ERAL PUBLIC DEFENDER, Richmond, Virginia, for

Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, Sara E. Chase, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

## OPINION

ALARCÓN, Senior Circuit Judge:

In this appeal, Eliazer Madrigal-Valadez ("Madrigal") seeks reversal of the district court's judgment, following a bench trial, that he was guilty of entering Fort Lee, a military installation, for a purpose prohibited by law, in violation of 18 U.S.C. § 1382.[1]

Section 1382 provides in relevant part:

> Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation;
>
> . . .
>
> Shall be fined under this title or imprisoned not more than six months, or both.

---

[1]The district court found Madrigal not guilty of the possession of a fraudulent identification document with the intent to defraud the United States to allow him to enter Fort Lee.

While the term is not used in § 1382, the courts have referred to this crime as a trespass. *See*, *e.g.*, *United States v. Bonilla*, 648 F.2d 1373, 1378 (1st Cir. 1981) (holding that persons with advance notice that their entry is prohibited "may be criminally prosecuted under section 1382 for an initial trespass.").

The indictment alleges that Madrigal "did knowingly and unlawfully attempt to enter upon the property of Fort Lee, Virginia, a military installation for a purpose prohibited by law, to wit: entering onto the base as an illegal alien."

We reverse the district court's judgment because we conclude the placing of a sign, setting forth entrance requirements some distance from a public highway on the Fort Lee access road leading to a security guard post does not provide notice of the requirements to enter the military installation.

We are also persuaded that a person, who has previously entered the United States without examination or inspection, or at a place not designated by immigration, does not violate 18 U.S.C. § 1382 or 8 U.S.C. § 1325(a) by subsequently entering a military installation *within the jurisdiction of the United States*.

I

A

The evidence presented at trial, when viewed in the light most favorable to the Government as the prevailing party, can be summarized as follows: On May 4, 2007, Madrigal drove to Fort Lee, an army installation in Virginia, to transport his passenger, a soldier, back to his army base. That was his sole purpose.

To approach the security guard post, Madrigal turned off the public highway onto a Fort Lee access road that led to it.

A sign was posted along the Fort Lee access road some distance from the highway. The parties conceded during oral argument that the sign is on the military base. The sign set forth the entry requirements in English. A photograph of the sign was admitted as Exhibit C. Exhibit C reads as follows:

ENTRY REQUIREMENTS

DOD DECAL & ID CARD OR DRIVERS LICENSE, VEHICLE REGISTRATION, PROOF OF INSURANCE

ENTRY IMPLIES

CONSENT TO SEARCH UPON REQUEST
CONSENT TO BREATH / BLOOD ALCOHOL TEST
MANDATORY USE OF SEAT BELTS
MOTORCYCLIST / BICYCLIST MUST WEAR HELMETS
NO PRIVATELY OWNED WEAPONS
NO LOUD MUSIC / NO SOLICITATION

Madrigal drove past the sign to the Fort Lee security guard post. Any car that does not have a DOD decal must go to the inspection pit area where visitors' permits are issued if proper identification is presented. Madrigal's automobile did not have a DOD decal.

A security guard asked Madrigal to present an identification card. Madrigal presented an identification card that had not been issued by a government agency. The card contains the words "not an official identification card." Madrigal was arrested at the inspection pit by a military police official for presenting a fraudulent identification document.

Madrigal did not speak English. He was interviewed by an officer who speaks Spanish. The officer filled out a Field

Interview Sheet. Madrigal provided his name, date of birth, and that his place of birth was Mexico.

A Department of Army civilian police officer interrogated Madrigal. He told the officer that he was a citizen of Mexico. The officer contacted Immigration and Customs Enforcement to ascertain Madrigal's status in the United States. He was informed that there was no record showing that Madrigal was in the United States.

## B

On May 8, 2007, Madrigal appeared at a preliminary and detention hearing before a magistrate judge. He was charged with presenting an identification card with the intent to defraud the United States in violation of 18 U.S.C. § 1028(a)(4). A military police officer testified that the identification card presented by Madrigal to a Fort Lee security guard was not a valid identification card. The magistrate judge held that the Government had demonstrated that there was probable cause to believe that Madrigal presented a false identification document to enter Fort Lee.

## C

Madrigal was indicted by a grand jury in the United States District Court for the Eastern District of Virginia on May 21, 2007. He was charged in count one with possessing a fraudulent Virginia Identification Card with the intent to defraud the United States "to allow him access on Fort Lee" in violation of 18 U.S.C. § 1028(a)(4). In count two, the indictment alleged that he "did knowingly and unlawfully attempt to enter upon the property of Fort Lee, Virginia, a military installation, for a purpose prohibited by law, to wit: entering onto the base as an illegal alien. (In violation of Title 18, United States Code, Section 1382.)"

## D

Madrigal waived trial by jury. He was found guilty of count two on June 19, 2007. The district court found Madrigal not guilty of count one. In explaining its disposition of count two, the district court reasoned as follows:

> I think this defendant entered the base on May the 4th. He did not have the proper identification and authority to enter. But more importantly, his presence there was illegal as he was in the United States, and I believe that the trespass statute is sufficiently broad to conclude [sic] it, and I find him guilty of Count 2.

The district court sentenced Madrigal to time served. The court also ordered that upon his release from custody, Madrigal should be turned over to the United States Immigration and Customs Enforcement for removal to Mexico.

## II

## A

Madrigal filed a timely appeal from the district court's final judgment in this matter. In its brief, the Government has alerted this Court to the fact that Madrigal has served his sentence and was not subject to supervised release. The parties do not dispute that he was found to be removable in immigration proceedings and was permitted to leave the United States voluntarily.

The Government also forthrightly suggested in its brief that "under existing precedent, defendant's challenge to his conviction has not become moot" because he may be subject to collateral consequences if his conviction is not set aside. Appellee's Br. at 4.

During oral argument, Madrigal's counsel argued that if the conviction is not reversed, it will affect his ability to receive permission to enter the United States. In *Sibron v. New York*, the Supreme Court noted that "[t]he mere 'possibility' that" a conviction may result in collateral consequences "is enough to preserve a criminal case from ending 'ignominiously in the limbo of mootness.'" *Id.* 392 U.S. 40, 55 (1968) (quoting *Parker v. Ellis*, 362 U.S. 574, 577 (1960) (dissenting opinion)). We agree with the parties that this appeal is not moot because he may be subject to collateral consequences if we decline to review the merits of his appeal.

B

Madrigal contends that the evidence was insufficient to demonstrate that he received notice of the entry requirements before he entered the Fort Lee military installation.

In determining whether the evidence was sufficient to support a conviction, a reviewing court must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "We review the sufficiency of the evidence to support a conviction by determining whether there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction." *United States v. Pasquantino*, 336 F.3d 321, 332 (4th Cir. 2003). Issues of law are reviewed *de novo*. *United States v. Leftenant*, 341 F.3d 338, 342 (4th Cir. 2003).

This circuit has not addressed the question whether, in a prosecution for violating § 1382, the Government must prove that a person must have notice that entry upon a military installation is prohibited. Those circuits that have confronted this issue have concluded that notice is a necessary element of § 1382 when the indictment alleges that the accused violated an entry requirement.

In *United States v. Bonilla*, the First Circuit reversed convictions under § 1382, in part, because the naval base failed to provide notice that entry was prohibited. 648 F.2d at 1382-83. The court explained that naval officers gave no verbal warnings to the defendants, the reservation had no fences, and no signs were posted to give the defendants warning that entry onto the military installation was prohibited. *Id.* at 1379-80 & n.14.

The court held in *Bonilla* that "when a section 1382 prosecution proceeds on the basis that the defendant has entered a restricted military reservation 'for the purpose of' unauthorized entry, we think it must be shown that the defendant had knowledge or notice that such entry was, in fact, prohibited." *Id.* at 1377.

In *United States v. Floyd*, 477 F.2d 217, 220 (10th Cir. 1973), the record showed that the defendants gathered to protest the war in Vietnam at a closed military installation. A sign was posted outside the base that warned that it was unlawful to enter without permission of the base commander. *Id.* at 223. The defendants crossed a white line that signified entry onto the base. *Id.* at 220. An Air Force officer confronted the defendants. He read the following statement to the protesters:

> THE INSTALLATION COMMANDER, COL. JOHN C. HOLLEY, UNITED STATES AIR FORCE, DENIES YOU PERMISSION TO ENER [sic] THIS MILITARY INSTALLATION OR TO BE PHYSICALLY PRESENT ON ITS PROPERTY.
>
> YOU ARE TRESPASSING ON A MILITARY INSTALLATION OF THE UNITED STATES. BY ORDER OF THE INSTALLATION COMMANDER YOU WILL IMMEDIATELY REMOVE YOURSELVES FROM THIS MILITARY INSTAL-

LATION. IF YOU DO NOT IMMEDIATELY COMPLY, YOU WILL BE ARRESTED AND PROSECUTED BY THE FEDERAL AUTHORITIES. YOU ARE ADVISED THAT PURSUANT TO TITLE 18 USC 1382, 'WHOEVER, WITHIN THE JURISDICTION OF THE UNITED STATES, GOES UPON ANY MILITARY, NAVAL, OR COAST GUARD RESERVATION, POST, FORT, ARSENAL, YARD, STATION, OR INSTALLATION, FOR ANY PURPOSE PROHIBITED BY LAW OR LAWFUL REGULATION . . . SHALL BE FINED NOT MORE THAN $500 OR IMPRISONED NOT MORE THAN SIX MONTHS, OR BOTH.'

*Id.* at 220-21. The defendants ignored the order. They sat down in the middle of the street and refused to leave. *Id.* at 221. The defendants were convicted of a violation of § 1382. In affirming the conviction, the Tenth Circuit explained its holding as follows:

They were warned by the sign, the five security guards, and the fence around the installation. In any event there can be no question that the sign and the security guards gave the appellants *actual notice* that they could enter *only* with the permission of the base commander. The record is clear that they were informed of the denial of their right of entrance before they entered the base.

*Id.* at 223-24.

In *United States v. Hall*, 742 F.2d 1153, 1154 (9th Cir. 1984), the Ninth Circuit affirmed the conviction of peace demonstrators who entered a military base without permission of the base commander. The record showed that signs were placed along a perimeter fence which contained a notice that entry was prohibited without permission of the base com-

mander. *Id.* at 1155. Military security officers repeatedly announced over a public address system that entry was prohibited without permission of the base commander. *Id.* The court held that "going upon a military base with knowledge that such entry is unauthorized violates the statute." *Id.*[2]

In the matter *sub judice*, Madrigal had no warning before leaving the highway to enter the Fort Lee access roadway that leads visitors to the Fort Lee guard post that such entry was prohibited or restricted. The warning that there are requirements to enter Fort Lee was not visible until after a visitor *already* had entered the Fort Lee access roadway to the security guard post. Furthermore, the security guards did not inform Madrigal that he could not proceed beyond the security guard post because he did not have a DOD decal on his vehicle and an identification card, or a driver's license. Instead of ordering Madrigal to leave Fort Lee because he did not have an identification card or a driver's license, the security guards called upon military police officers to arrest Madrigal for presenting a fraudulent identification card.

The record does not demonstrate that Madrigal had notice of the requirements restricting entry into Fort Lee *before* he left the highway and drove up the Fort Lee access road to the security guard post. Accordingly, we reject the Government's contention that the notice requirement was satisfied when the sign became visible to Madrigal as he passed it on the road to the security guard post.

We agree with our sister circuits that a person cannot be convicted of entering a military installation in violation of its entry requirements unless he or she has been provided with

---

[2]Each of these cases held that notice of entry requirements is necessary before a person can be held to have violated §1382. Since warning of the entry requirements was not visible from the public highway in this matter, we do not address the question in this appeal regarding the type of notice that is required to demonstrate a violation of §1382.

notice that entry is prohibited or restricted. Because there was no sign posted at the entry to the Fort Lee access road that set forth the entry requirements, Madrigal did not have notice that he could not enter Fort Lee because he did not have a driver's license in his possession. We hold therefore that the district court erred in determining that the evidence was sufficient to find Madrigal guilty of entering Fort Lee in violation of §1382 because of its conclusion that "[h]e did not have proper identification . . . to enter."

C

The district court also held that Madrigal's presence on the Fort Lee military installation violated § 1382 because "he is not legally in the United States." J.A. 99-100. As noted above, the indictment alleges that Madrigal "did knowingly and unlawfully attempt to enter upon the property of Fort Lee, Virginia, a military installation, for a purpose prohibited by law, to wit: entering onto the base as an illegal alien." The Government argued in its brief before this court that "[t]he defendant's status as an illegal alien also satisfies the requirements of § 1382." Appellee's Br. 10. No statute, regulation, or any court decision is cited for this novel proposition. Furthermore, the Government's argument also ignores the undisputed evidence in the record that Madrigal's sole purpose in entering the Fort Lee access road was to transport a soldier back to his military base.

Entry into the United States at a place not designated by immigration officers, or without inspection is a crime pursuant to 8. U.S.C. § 1325(a).[3] Madrigal apparently violated

---

[3]Section 1325(a) provides as follows:

Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful

§ 1325(a) *prior* to May 4, 2007, the date he drove a soldier back to his military base.[4] Thus, while Madrigal violated § 1325(a) when he entered the United States, he did not violate that statute when he entered the Fort Lee access road. Our research has not disclosed any authority that makes the *status* of being in the United States after entering in violation of § 1325(a) a separate crime. Accordingly, contrary to district court's alternative holding, Madrigal's entry into the Fort Lee access road was not conduct that was prohibited by § 1325(a) or § 1382.

## CONCLUSION

Because the evidence is insufficient to demonstrate that Madrigal had notice of the requirements for entry before he drove onto the Fort Lee access road, or that the entry by an undocumented alien of a military installation is a crime prohibited by federal law, we hold that the judgment must be reversed.

*REVERSED*

---

concealment of a material fact, shall, for the first commission of any such offense, be fined under Title 18 or imprisoned no more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both.

[4]There is no evidence in the record that Madrigal illegally entered or was found in the United States after he was denied admission, excluded, deported, or removed in violation of 8 U.S.C. § 1326(a). Thus, we do not reach the separate question whether such status might satisfy the purpose requirement of § 1382.