**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 09-4811**

───────────

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

       v.

YVONNE MARIE FOUNTAIN,

             Defendant - Appellant.

───────────

**No. 09-4835**

───────────

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

       v.

KENNETH LEE FOSTER,

             Defendant - Appellant.

───────────

Appeals from the United States District Court for the Western District of North Carolina, at Asheville.  Lacy H. Thornburg, District Judge.  (1:09-cr-00013-MR-DLH-9; 1:09-cr-00013-MR-DLH-8)

───────────

Argued:  January 28, 2011          Decided:  March 14, 2011

───────────

Before WILKINSON, AGEE, and DAVIS, Circuit Judges.

───────────

Affirmed by unpublished per curiam opinion.

―――――――――

**ARGUED:** Samuel Bayness Winthrop, WINTHROP & WINTHROP, Statesville, North Carolina; Sherlock Valentino Grigsby, LAW OFFICE OF SHERLOCK GRIGSBY, Washington, D.C., for Appellants. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Anne M. Tompkins, United States Attorney, Charlotte, North Carolina, for Appellee.

―――――――――

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Yvonne Marie Fountain and Kenneth Lee Foster (collectively "the Defendants") appeal from their convictions following a joint jury trial and from the sentences imposed by the district court. On appeal, they argue: (1) the district court erred in denying their motions to sever and motions to suppress; (2) there was insufficient evidence to sustain their drug conspiracy convictions; and (3) the district court erred at sentencing. For the reasons set forth below, we affirm the judgment of the district court in both cases.

I.

The Defendants were charged, along with a number of co-defendants and co-conspirators, with conspiring to possess with intent to distribute cocaine base ("crack cocaine"), in violation of 21 U.S.C. §§ 846 and 841(a)(1). They were tried jointly, along with a co-conspirator, Perry Roger Shippy. The jury returned guilty verdicts as to all three defendants on the conspiracy charge. The jury also found Foster and Shippy guilty of knowingly using a communication facility to further a drug offense, in violation of 21 U.S.C. § 843(b).[1]

_____

[1] Fountain was also charged with the Section 843(b) offense, but the government conceded that Fountain's motion for judgment
(Continued)

The evidence regarding the crack cocaine conspiracy was gathered initially by investigators using traditional investigative techniques, including controlled purchases of crack cocaine, use of confidential sources, physical surveillance, and traffic stops after suspected drug purchases. After discovering that the conspiracy was likely widespread and involved large amounts of crack cocaine, investigators later sought and obtained a wiretap order, subsequently extended by the district court, in order to intercept communications from telephone numbers believed to be utilized by Foster. The wiretaps were sought so that investigators could identify Foster's sources of supply and additional distributors and also after agents had encountered difficulties with physical surveillance.

The Defendants were arrested when search warrants were executed at their respective residences. During the search of the residence Fountain shared with her boyfriend, Dennis Lamar Bruton,[2] investigators found Fountain in a bathroom accessible from the master bedroom, where Bruton was located. Officers had

_____

as to that count should be granted. It was not submitted to the jury.

[2] Bruton, who was indicted as a co-defendant, pled guilty to the conspiracy charge.

4

to use force to open both the bedroom and bathroom doors. Once officers forcibly entered the bathroom, Fountain was found standing next to the toilet with chunks of crack cocaine on the toilet seat, in the toilet, and on the floor beside the toilet. Additionally, although Fountain stated that she had just taken a shower, she was wearing pajamas, had a nightgown on over the pajamas, and was dry. Agents recovered from her residence almost 200 grams of crack cocaine, including 92.2 net grams of crack cocaine in the master bathroom. Agents also discovered 23 grams of marijuana, a scale, a box of ammunition, and more than $20,000 in United States currency.[3]

The evidence against Foster was significant. The jury heard that Foster received large quantities of cocaine from suppliers, "cooked" or converted the powder into crack cocaine and sold it to numerous individuals. He engaged in multiple daily crack cocaine transactions over the course of many months. When the search warrant was executed at his home in February 2009, more than 150 net grams of crack cocaine, more than 500

---

[3] In addition to Fountain's conduct during the execution of the search warrant and evidence seized from her home, evidence of Fountain's participation in the conspiracy also included her being observed by a detective in August 2008 leaving her residence, walking to an automobile parked outside, sitting in the automobile for approximately two minutes, and then exiting with a large amount of cash in her left hand. Although Fountain asserts on appeal that this transaction was not drug-related, the jury was entitled to infer otherwise.

net grams of powder cocaine, and over $5,000 in cash were seized, as well as various materials used to convert powder cocaine to crack cocaine.

The only evidence of direct communications between Foster and Fountain involved four phone calls, but none of these conversations were related to drug transactions. There were significant drug-related contacts, however, between Foster and Bruton. Intercepted wire communications revealed Bruton and Foster repeatedly conversed about the large-scale distribution of controlled substances.

Upon return of the guilty verdicts by the jury, the district court sentenced Fountain to the mandatory statutory minimum of 240 months. Foster was sentenced to 360 months on the conspiracy count and 96 months on the § 843(b) offense, to be served concurrently. Both defendants noted timely appeals. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

II.

A.

The Defendants argue that the district court erred in failing to grant their motions to sever. They had requested separate trials and to be tried separately from Shippy, who had been charged in a separate indictment but was alleged to be part

6

of the same conspiracy. In denying the motions to sever and granting the Government's motion for joinder, the district court specifically found both that the conspiracy alleged could have been brought in a single indictment and that a joint trial did not appear to pose a risk of prejudice to any defendant's right to a fair trial.

We review a district court's decision to deny a motion to sever for abuse of discretion. United States v. Singh, 518 F.3d 236, 255 (4th Cir. 2008). While severance of trials for defendants named in the same indictment is permitted if joinder "appears to prejudice a defendant," Fed. R. Crim. P. 14, joint trials of defendants who are indicted together are preferred. Zafiro v. United States, 506 U.S. 534, 537 (1993). Accordingly, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539. In a conspiracy case, moreover, "[j]oinder is particularly favored." United States v. Montgomery, 262 F.3d 233, 244 n.5 (4th Cir. 2001) (citation omitted).

The record here supports the district court's decision to deny the motions to sever. Having been indicted together, neither Fountain nor Foster demonstrated a strong showing of prejudice from a joint trial as required for severance under

Rule 14. See United States v. Mir, 525 F.3d 351, 357 (4th Cir. 2008). As to Shippy being tried with them, while he was charged in a separate indictment, he was charged with conspiring with Foster and Bruton (as well as other co-conspirators) and over the same period of time and in the same geographic area as Fountain and Foster. Thus, he could have been charged in the same indictment and joinder was permissible. See Fed. R. Crim. P. 13. Again, no showing of prejudice from the joinder has been made. Especially in light of the preference for joinder in conspiracy cases, the district court did not abuse its discretion in allowing Shippy to be tried with Fountain and Foster.

## B.

Foster next challenges the district court's denial of his motion to suppress evidence seized at his residence which he contends was based on a defective search warrant. The Defendants also challenge the district court's denial of their motions to suppress evidence obtained through the wiretap orders.

Foster first argues that his motion to suppress should have been granted because the search warrant was based on "stale" evidence. There is no merit in his contention. Special Agent Dan Guzzo's affidavit, which was offered to establish

8

probable cause for the warrant, sets forth a number of facts that support a finding that contraband was reasonably likely to be found in Foster's residence on February 2, 2009.[4]  See, e.g., J.A. at 33, 35 (surveillance demonstrated Foster conducted daily crack cocaine distribution activities out of his home, from October 24, 2008 to February 2, 2009, and "intercepted wire communications" revealed Bruton and Foster had repeated discussions about the distribution of controlled substances, including one on January 26, 2009).  No error has been shown as to the warrant's issuance or the district court's denial of Foster's motion to suppress.

Regarding the challenges to the wiretap orders, we address only those issues raised by the Defendants in their opening brief; the remainder are deemed waived.  See Cavallo v. Star Enter., 100 F.3d 1150, 1152 n.2 (4th Cir. 1996) ("[A]n issue first argued in a reply brief is not properly before a court of appeals.").  In their opening brief, the Defendants make two challenges to the initial wiretap warrant and the denial of their motions to suppress evidence obtained through the wiretap warrants.[5]  First, they contend that the wiretap

_____

[4] Guzzo's affidavit was signed and sworn on February 2, 2009, the same date the warrant was issued.

[5] In two separate footnotes in their opening brief, Foster and Fountain attempt to raise additional challenges.  Because (Continued)

9

applications were not supported by a full and completed statement of the facts, pointing to the application of AUSA Rose as lacking in such detail. Second, they argue that the necessity requirement was not met.

As to the contention that the wiretap application did not comply with 18 U.S.C. § 2518(1)(c) because it did not contain a "full and complete statement" of the facts, the Defendants claim that our review is limited to AUSA Rose's application and that Guzzo's affidavit, although it was incorporated by reference, cannot be considered.[6] In particular, they allege that defense counsel did not have access to Guzzo's affidavit. There is nothing in the record and the Defendants cite to nothing, however, to support their assertion that trial counsel did not have a copy of the affidavit or could not have obtained it, had it been requested. Moreover, it is undisputed that the district court had Guzzo's affidavit when it issued the wiretap warrant. Thus, we may consider Guzzo's affidavit in determining whether the application complied with § 2518(1)(c).

_____

neither is adequately briefed, we deem these issues abandoned. In any event, we have reviewed those challenges and conclude they are without merit.

[6] Guzzo's affidavit is in the supplemental joint appendix and is properly before this Court. Additionally, the district court had the affidavit before it when it issued its wiretap order.

Review of the application and Guzzo's affidavit clearly demonstrates that the "full and complete" information required by § 2518(1) was supplied to the court. No error has been shown.

As to the related challenge, i.e., that the applications did not contain the requisite showing of necessity, we find no abuse of discretion. See United States v. Wilson, 484 F.3d 267, 280 (4th Cir. 2007) (determination of "necessity" under 18 U.S.C. § 2518(3)(c) for issuance of a wiretap warrant is reviewed for abuse of discretion). In Wilson, the Fourth Circuit explained the necessity requirement as follows:

> Congress has placed a burden on the Government to show the "necessity" of any wiretap application via a full and complete statement as to whether "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3). The burden that this provision imposes on the Government, however, is not great, and the adequacy of such a showing is to be tested in a practical and commonsense fashion that does not hamper unduly the investigative powers of law enforcement agents. Although wiretaps are disfavored tools of law enforcement, the Government need only present specific factual information sufficient to establish that it has encountered difficulties in penetrating the criminal enterprise or in gathering evidence [such that] wiretapping becomes reasonable.

Wilson, 484 F.3d at 281 (citations and quotations omitted); brackets in original.

The Defendants contend that the government did not meet the necessity requirement because investigators were in

11

fact successful in identifying certain co-conspirators and in conducting some controlled buys and drug seizures leading to arrests. Thus, they argue other investigative techniques were sufficient. We disagree. The investigation here was of a large-scale conspiracy with an extended network of suppliers and purchasers. Guzzo's affidavit contains more than nine pages devoted to explaining why alternative measures had either been tried and failed, or appeared unlikely to succeed, and that explanation contains information particular to this case.

In reviewing the adequacy of the showing here in "a practical and commonsense fashion . . . that does not 'hamper unduly the investigative powers of law enforcement agents,'" United States v. Smith, 31 F.3d 1294, 1297 (4th Cir. 1994) (citation omitted), we conclude that the showing of necessity was sufficient. The district court did not abuse its discretion in issuing the initial wiretap order or in denying the motion to suppress.


C.

Both Fountain and Foster argue there was insufficient evidence to support their convictions. Fountain argues that there was only "threadbare" circumstantial evidence to find she knowingly participated in a conspiracy. The Defendants also argue that the evidence adduced at trial was insufficient to

12

prove they knowingly participated in a single conspiracy. Instead, they contend that "the evidence merely shows multiple buyer and seller relationships without an understanding or agreement between the various parties." Appellants' Br. at 31.[7]

A jury's guilty verdict will be upheld if, viewing the evidence in the light most favorable to the Government, a rational factfinder could have found each element of the charged offense beyond a reasonable doubt. United States v. Madrigal-Valadez, 561 F.3d 370, 374 (4th Cir. 2009). An appellate court "may not weigh the evidence or review the credibility of the witnesses" because "[t]hose functions are reserved for the jury." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). "A defendant challenging the sufficiency of the evidence faces a heavy burden." United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007).

Fountain argues that the evidence against her was scant and insufficient to find she was a participant in the conspiracy. We disagree and conclude there was substantial evidence to support the jury's guilty verdict. In short, there

---

[7] In a related argument, the Defendants claim that the government's use of "multiple conspiracies as evidence to support an indictment for a single conspiracy" is a material variance. Appellants' Br. at 34. Because we conclude that the jury's finding of a single conspiracy is supported by substantial evidence, there was no variance.

13

was no clear failure by the prosecution here. See Foster, 507 F.3d at 244-45.

We likewise find unconvincing the argument that there was insufficient evidence of a single conspiracy. Under this Court's precedent, "trial evidence is sufficient to establish a single conspiracy where the conspirators are shown to share the same objectives, the same methods, the same geographic spread, and the same results." United States v. Smith, 451 F.3d 209, 218 (4th Cir. 2006); United States v. Jeffers, 570 F.3d 557, 567 (4th Cir. 2009) ("[A] single conspiracy exists, when the conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product.")(citation omitted). Furthermore, "a defendant may be convicted of conspiracy with little or no knowledge of the entire breadth of the criminal enterprise[.]" United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc). This is particularly true in "contemporary drug conspiracies" which may "frequently . . . result[] in only a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market . . . ." United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993).

At trial, the jury heard evidence that Foster had continuing drug-related relationships with numerous individuals

14

whose concerted efforts resulted in the distribution of large quantities of crack cocaine in western North Carolina. The jury also heard evidence from which it could infer that Bruton was a participant in a conspiracy with Foster, a conspiracy to which Bruton pled guilty. The jury could also infer that Fountain was aware of and assisted Bruton in this drug-dealing based on her conduct when the search warrant was executed at her residence and her August 2008 cash transaction. A reasonable jury could construe her acts after the search warrant was executed as an attempt to destroy evidence of the conspiracy of which she was a part.

Having reviewed the trial record and keeping in mind that the "jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented," Burgos, 94 F.3d at 862 (internal quotation mark and citation omitted), we conclude that there was sufficient evidence from which the jury could conclude that Fountain and Foster were part of a single charged conspiracy. Therefore, the challenges raised to their convictions fail.

D.

Foster raises three challenges to his sentence. First, he argues the district court erred in applying a leadership enhancement pursuant to U.S.S.G. § 3B1.1. Second, he

15

argues his sentence is procedurally unreasonable due to the district court's failure to adequately explain the sentence imposed. Third, he contends the district court failed to address his argument that he was entitled to a sentence below the advisory guideline range both: (1) because his criminal history category and status as a career offender overstated his criminal record; and (2) because of the disparity inherent in the guidelines between sentences for offenses involving crack cocaine and offenses involving powder cocaine.[8]

With regard to the district court's imposition of a leadership adjustment for Foster, that decision is a "factual determination reviewed for clear error." United States v. Kellam, 568 F.3d 125, 147-48 (4th Cir. 2009) (citation omitted). In order for the four-level role adjustment in U.S.S.G. § 3B1.1(a) to apply, the court must find that a defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Both the

---

[8] Fountain also challenges on appeal the district court's refusal to impose a below-guidelines sentence based on the crack-powder cocaine disparity. Like Foster's, her claim is unreviewable. (See infra at 18.) Additionally, because Fountain was sentenced to the mandatory minimum sentence as set forth in the statute of conviction, the district court could not have imposed a sentence lower than what she received. See Kimbrough v. United States, 552 U.S. 85, 106-08 (2007)(district courts may deviate from the guidelines based on disagreements with the crack/powder ratio, but remain bound by statutory mandatory minimum sentences).

trial evidence and a review of the facts of the offense as set forth in the Presentence Investigation Report show that the district court's finding was not clearly erroneous. We therefore reject this claim.

While the parties disagree as to the proper standard of review for Foster's claim that the court failed to adequately explain his sentence, we need not resolve the dispute. Regardless of which standard is applied, no error or abuse of discretion has been shown. It is procedural error to "fail[] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Gall v. United States, 552 U.S. 38, 51 (2007). In this case, the 360-month sentence imposed was the bottom end of the advisory guideline range; thus, the explanation required need not be "elaborate or lengthy." United States v. Hernandez, 603 F.3d 267, 271 (4th Cir. 2010). The court must, however, "make an individualized assessment based on the facts presented" when imposing a sentence within the proper guidelines range. Gall, 552 U.S. at 50.

Having reviewed the district court's reasons for its imposition of sentence, we find that explanation reflects that the court was engaging in an individual analysis of Foster's offense and background and it explicitly addressed a number of the § 3553(a) factors. Thus, we conclude the district court

17

gave sufficient explanation for its selection of Foster's sentence.

Foster's final argument is that the district court erred in refusing to downwardly depart, because of the crack-powder cocaine disparity in the guidelines or because of an overrepresented criminal history. That decision is not reviewable on appeal absent some indication that the district court "failed to understand its authority" to impose a lesser sentence. United States v. Herder, 594 F.3d 352, 362 (4th Cir. 2010) (citation omitted). Nothing said by the district court in Foster's case suggests that it thought it could not depart from the guidelines range. Thus, this Court may not presume that the district court thought it lacked such authority. Id. ("[W]hen the sentencing court is silent regarding its reason for refusing a departure or a variance sentence, the appellate court is precluded from inferring that the sentencing court believed that it lacked the authority to do so.") (citation omitted). Accordingly, we do not review the district court's decision not to impose a sentence below the advisory guidelines range.

III.

For the aforementioned reasons, we affirm the judgments of the district court.

AFFIRMED

18