**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 14-4235**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JOSE MORENO-AZUA,

        Defendant – Appellant.

---

**No. 14-4243**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

YOEL JIMENEZ,

        Defendant - Appellant.

---

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, Chief District Judge. (3:11-cr-00386-FDW-DSC-1; 3:11-cr-00386-FDW-DSC-3)

---

Submitted: January 27, 2015      Decided: February 3, 2015

---

Before WYNN and FLOYD, Circuit Judges, and DAVIS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

Ross Richardson, Executive Director, Ann L. Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina; Eric J. Foster, LAW OFFICE OF RICK FOSTER, Asheville, North Carolina, for Appellants. Anne M. Tompkins, United States Attorney, J. George Guise, Amy Ray, Assistant United States Attorneys, Asheville, North Carolina; Leslie R. Caldwell, Assistant Attorney General, Sung-Hee Suh, Deputy Assistant Attorney General, Thomas E. Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In April 2012, a federal grand jury charged Jose Moreno-Azua ("Azua"), Jose Fernando-Azua ("Fernando"), and Yoel Jimenez with conspiracy to distribute and to possess with intent to distribute five kilograms or more of powder cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846 (2012). Fernando and two other co-conspirators, Amber Griffin and Mashahri Graham, were charged with a separate conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine. Griffin and Graham accepted guilty pleas and testified at trial against Azua and Jimenez (collectively "Defendants"). Following a five-day trial at which nineteen witnesses testified, the jury deliberated for approximately two hours prior to convicting Defendants and finding that the conspiracy involved five kilograms or more of cocaine.

The district court later imposed the statutory mandatory term of life in prison on Azua[1] and sentenced Jimenez to 128 months' imprisonment. These appeals timely followed.

Jimenez raises three issues on appeal, assigning error to two evidentiary rulings and the willful blindness jury instruction that was given at the Government's behest. Azua

---

[1] Prior to trial, the Government filed a 21 U.S.C. § 851 (2012) notice of its intent to seek an enhanced penalty as to Azua based on his two prior Texas felony drug convictions.

3

argues that the prosecutor violated due process by refusing Azua's mid-trial request to accept a pre-trial plea offer and challenges the district court's constitutional authority to evaluate whether his prior convictions involved separate and distinct criminal conduct. We find these contentions are without merit and therefore affirm the criminal judgments.

I.

Jimenez first challenges the admission of testimony pertaining to Azua's phone calls from jail, offered by Special Agent Ublado Rios of Homeland Security Investigations. Azua's calls were recorded, and Rios translated into English those portions that were in Spanish. Over defense counsel's objection, the court allowed Rios to offer his lay opinion regarding the true meaning of statements Azua made during these calls, citing Rios' familiarity with the case and experience investigating drug offenses.

Jimenez focuses on Rios' testimony decoding Azua's conversation with Griffin in which they discussed whether Jimenez was a police informant. Rios opined that, in code, Azua conveyed to Griffin that he did not believe that Jimenez was an informant and further explained the basis for Azua's belief.

On appeal, Jimenez argues that the district court abused its discretion in allowing Rios to offer this lay opinion testimony because Rios' opinions were not based on his personal

knowledge but, rather, on his post-arrest investigation. Jimenez relies on this court's decision in United States v. Johnson, 617 F.3d 286 (4th Cir. 2010), for support.

We review a district court's evidentiary rulings for abuse of discretion, which occurs when the district court's "decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." Johnson, 617 F.3d at 292 (internal quotation marks omitted). Evidentiary rulings are further evaluated under a "harmless error" standard, pursuant to which an error will not warrant reversal if we may "say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Id. (internal quotation marks omitted).

"[A] witness's understanding of what the defendant meant by certain statements is permissible lay testimony, so long as the witness's understanding is predicated on his knowledge and participation in the conversation." United States v. Hassan, 742 F.3d 104, 136 (4th Cir.), cert. denied, 135 S. Ct. 157 (2014). The latter component is missing here, as Rios was not involved in the conversation between Azua and Griffin. We thus conclude that Rios' lay opinion testimony on this matter was erroneously admitted.

5

But the error is harmless for two reasons. First, the jury had already heard the gist of this opinion from Griffin herself. Moreover, the record, taken as a whole, leads us to conclude that the jury was not "substantially swayed" by this isolated aspect of Rios' testimony. See Johnson, 617 F.3d at 295. As we observed in Johnson, "[o]ften in criminal cases where there is a significant amount of evidence which inculpates a defendant independent of the erroneous testimony, the error is considered harmless." Id. This is precisely the case here.

The Government presented a substantial amount of circumstantial evidence implicating Jimenez in this conspiracy, including that Jimenez:  orchestrated to transport a van, in which nine one-kilogram packages of cocaine were found hidden, from Texas to Charlotte; paid cash for a plane ticket from Texas to Charlotte and planned to return to Texas the day after the van was delivered; flew to Charlotte, as planned, using a different name, to accept delivery of the van upon its arrival; and was otherwise a stranger to the Azuas and the others involved, but had a significant number of contacts with Azua in the weeks leading up to the van's delivery.

There was also testimonial evidence that more directly linked Jimenez to the conspiracy, including (1) the testimony of another inmate who had been incarcerated with Azua, who testified that Azua told him that the drugs were shipped from

Texas to Charlotte in a van, and that the man who arranged for this flew to Charlotte; and (2) Graham's testimony that he understood from Azua that the man who was "flying in" was there "to oversee everything[,]" including "mak[ing] sure the product was right." (J.A. 981-82).[2] Graham confirmed that "the product" referred to cocaine. (J.A. 982).

This evidence, taken together, leads us to conclude that the erroneously admitted testimony likely did not sway the jury to convict Jimenez. Accordingly, Jimenez's first claim of trial court error fails.

## II.

Prior to trial, the Government filed notice of its intent to present evidence pursuant to Federal Rule of Evidence 404(b). This evidence was the testimony of William Brunelle, a police officer from Meridian, Mississippi, who had stopped a vehicle in which Jimenez was a passenger a few months before the events underlying this trial. Jimenez sought to suppress this evidence on various Fourth Amendment grounds.

The district court conducted a mid-trial hearing on the motion to suppress, where Brunelle testified at length regarding the stop. The court subsequently denied the motion to

---

[2] Citations to the "J.A." refer to the joint appendix submitted by the parties in this case.

7

suppress and further ruled that Brunelle's testimony was admissible pursuant to Rule 404(b) because it established Jimenez's intent and knowledge of drug trafficking. The court also observed that this testimony undermined Jimenez's position, raised in defense counsel's opening statement, that there was no evidence to establish Jimenez's knowledge of the van's contents.

On appeal, Jimenez restates his contention that Brunelle's testimony should have been suppressed because the underlying traffic stop violated the Fourth Amendment. Specifically, relying on United States v. Digiovanni, 650 F.3d 498 (4th Cir. 2011), Jimenez complains that the detention lasted longer than necessary to effectuate the purpose of the stop, which was to apprise the driver that he was following other vehicles too closely and to issue either a citation or warning for this violation.

When reviewing a district court's denial of a motion to suppress, we review factual findings for clear error and legal determinations de novo and view the evidence in the light most favorable to the Government. United States v. Green, 599 F.3d 360, 375 (4th Cir. 2010). The district court's refusal to suppress evidence is also subject to harmless error review. See United States v. Blauvelt, 638 F.3d 281, 290-91 (4th Cir. 2011); United States v. Abu Ali, 528 F.3d 210, 231 (4th Cir. 2008).

Jimenez's contention that, pursuant to this court's rationale in Digiovanni, Brunelle impermissibly extended the otherwise lawful traffic stop, has some merit. However, even if we assume that the district court's ruling is erroneous under Digiovanni, we conclude that this error is harmless. The jury was instructed to consider Brunelle's testimony only as proof of intent, preparation, plan or scheme, or knowledge. And viewing this evidence through this restricted lens, see United States v. Chong Lam, 677 F.3d 190, 204 (4th Cir. 2012) (noting the long-standing principle that "juries are presumed to follow their instructions" (internal quotation marks omitted)), it was secondary to the other direct and circumstantial evidence that the Government presented to establish the same. Because we thus conclude that any "rational fact finder would have found [Jimenez] guilty absent the error[,]" United States v. Poole, 640 F.3d 114, 119-20 (4th Cir. 2011) (citing Chapman v. California, 386 U.S. 18, 24 (1967)), we reject the second assignment of error.

## III.

In his final appellate contention, Jimenez maintains that the district court abused its discretion in granting the Government's request for a willful blindness jury instruction. According to Jimenez, under Supreme Court and circuit precedent, such an instruction is only appropriate "when evidence exists

9

that the defendant deliberately avoided learning the facts." (Appellants' Br. at 42). We review the district court's decision to offer a jury instruction for an abuse of discretion. United States v. Jinwright, 683 F.3d 471, 478 (4th Cir. 2012).

An argument similar to Jimenez's was pressed in United States v. Ali, 735 F.3d 176, 187-88 (4th Cir. 2013), cert. denied, 134 S. Ct. 1357 (2014). There, defendants maintained that the willful blindness instruction "should not have been given without evidence that they deliberately ignored relevant facts." Ali, 735 F.3d at 187. At the onset of our analysis, we observed that a willful blindness instruction is appropriate when "a defendant asserts that he did not have the requisite *mens rea* to meet the elements of the crime but evidence supports an inference of deliberate ignorance[.]" Id. (emphasis added) (internal quotations marks omitted). We readily concluded that the ample "warning signs" of criminality justified the instruction. Id. at 188.

The same result is had here. Jimenez's theory of defense, as asserted in his opening and closing arguments, was that the Government lacked sufficient evidence to establish his knowledge of the van's illegal contents. But there was considerable evidence — including, most notably, Jimenez's decision to ship the van to Charlotte, as opposed to driving it himself, and flying to Charlotte under another name — from which

10

the jury could infer that Jimenez's claimed ignorance was intentional or deliberate. Indeed, our review of the record confirms, in Ali's parlance, the myriad of "warning signs" that certainly would have been known to, and were ignored by, Jimenez. We therefore discern no abuse of discretion in giving the willful blindness instruction here.

IV.

Azua, in the first of two issues raised on appeal, argues that the prosecutor violated due process in declining his mid-trial request to accept a pre-trial plea offer extended by the Government. We disagree.

In the middle of the trial, the district court engaged the parties in a colloquy to ensure that all plea offers had been communicated to Azua and Jimenez. The Government explained the offers it had made to both Defendants. Particularly, in exchange for Azua's guilty plea, the Government offered to withdraw one of the § 851 predicates, which would have reduced Azua's sentencing exposure from a mandatory life sentence to twenty years to life in prison. Azua explained that he chose to decline the offer because he did not have any information to earn a sentence reduction.

After Graham's testimony concluded, Azua sought to accept the pre-trial plea offer. The prosecutor and defense counsel conferred, after which the prosecutor informed the court

11

that its prior offer was no longer available. The district court questioned Azua to ensure that he understood his options, which included entering a straight guilty plea or continuing with the trial. Azua, again averring that he understood the issues, indicated that he did not want to enter a guilty plea.

On appeal, Azua maintains that the prosecutor violated the Due Process Clause of the Fifth Amendment by refusing his mid-trial request to accept the pre-trial plea offer. Azua relies on the Supreme Court's decision in Bordenkircher v. Hayes, 434 U.S. 357 (1978), for support.

But as the Government rightly identifies in its response brief, a criminal defendant does not have a constitutional right to plead guilty. See Weatherford v. Bursey, 429 U.S. 545, 560-61 (1977). Azua fails to point us to any authority, controlling or persuasive, to support his contention that the Government was constitutionally obligated to re-invigorate an expired plea offer or explain its reasons for declining to do so. Existing precedent from other circuits cuts against Azua's claim. See, e.g., United States v. Osif, 789 F.2d 1404, 1405 (9th Cir. 1986) ("The government is . . . under no obligation to reoffer an agreement that was previously rejected and [defendant] has no right to the plea agreement that he was originally offered."). We thus reject this assignment of error.

12

V.

Azua's final argument is that the district court lacked the constitutional authority to evaluate whether his prior felony drug convictions involved "separate and distinct criminal episodes." (Appellants' Br. at 47). Azua maintains that, in making this factual finding, the district court ran afoul of Descamps v. United States, 133 S. Ct. 2276 (2013).

We cannot accept this newly minted constitutional argument[3] as there was no error, plain or otherwise, in the district court's § 851 analysis. See United States v. Higgs, 353 F.3d 281, 324 (4th Cir. 2003) (reviewing for plain error a constitutional claim raised for the first time on appeal). It is well established in this circuit that, to qualify for an enhanced sentence pursuant to 21 U.S.C. § 841(b)(1)(A), the defendant's prior convictions must be for "'separate criminal episodes, not separate convictions arising out of a single

---

[3] In the district court, Azua argued that the two § 851 predicates qualified as a single conviction because he received concurrent sentences. Defense counsel acknowledged that he was seeking an extension of our decision in United States v. Davis, 720 F.3d 215 (4th Cir. 2013) (holding that, "where a defendant receives a 'consolidated sentence' (or 'consolidated judgment') under North Carolina law, it is one sentence and absent another qualifying sentence, the [career offender] enhancement is inapplicable"). The district court concluded that the dispositive inquiry was not whether the sentences were set to run concurrent but, rather, whether the convictions arose from separate criminal episodes.

transaction.'" United States v. Ford, 88 F.3d 1350, 1365 (4th Cir. 1996) (quoting United States v. Blackwood, 913 F.2d 139, 145-46 (4th Cir. 1990)); see also United States v. Holmes, 384 F. App'x 219, 228 (4th Cir. 2010) (unpublished after argument). Here, the criminal judgments from Azua's two prior Texas convictions establish that Azua possessed a controlled substance on two separate occasions, almost five years apart.[4] The district court acted well within its authority in reviewing the Texas judgments to determine this critical fact. See United States v. McDowell, 745 F.3d 115, 123-24 (4th Cir. 2014) (explaining the Supreme Court's holding in Almendarez-Torres v. United States, 523 U.S. 224 (1998), that "the Sixth Amendment permits a judge to find the fact of a prior conviction by a mere preponderance of the evidence, even if this fact raises the statutory maximum or minimum penalty for the current offense[,]" and noting that this exception "remains good law"), cert. denied, 2015 WL 132957 (U.S. Jan. 12, 2015) (Nos. 13-10640, 13A1200); see accord United States v. Blair, 734 F.3d 218, 226-27 (3d Cir. 2013) (opining that neither Descamps nor Alleyne[5] restricts the Almendarez-Torres exception, which "allows judges

_____

[4] These facts were included in the presentence report, and defense counsel conceded the existence of an intervening arrest at sentencing.

[5] Alleyne v. United States, 133 S. Ct. 2151 (2013).

to consider prior convictions. When the pertinent documents show . . . that the prior convictions are for separate crimes against separate victims at separate times, <u>Alleyne</u> does not somehow muddy the record and convert the separateness issue into a jury question"), <u>cert. denied</u>, 135 S. Ct. 49 (2014). Accordingly, Azua's constitutional challenge to the district court's evaluative process fails.

For the foregoing reasons, we affirm Defendants' criminal judgments. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

<u>AFFIRMED</u>