**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4778**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

KELVIN MELTON, a/k/a Dizzy, a/k/a Old Man,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Dever III, District Judge. (5:14-cr-00072-D-1)

Submitted: December 11, 2018                    Decided: February 21, 2019

Before WILKINSON, AGEE, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Laura E. Beaver, BEAVER LAW FIRM, Raleigh, North Carolina, for Appellant. John Stuart Bruce, First Assistant United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Phillip A. Rubin, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kelvin Melton appeals his convictions for several kidnapping-related offenses, arguing that the district court (1) violated his constitutional rights by allowing the introduction of a statement he made during a pre-trial hearing on counsel's motion to withdraw and (2) abused its discretion by allowing the Government to admit several categories of evidence. Finding no reversible error, we affirm.

## I.[1]

### A.

In the 1990s, Melton was serving a term of imprisonment at Riker's Island, New York, when he became a founding member of the United Blood Nation ("UBN"), an east coast gang that shares the informal moniker "Bloods" with the original west coast gang. From that time forward, Melton held various leadership positions within the UBN and its One 8 Trey set, commanding a loyal following.[2] Melton's rank allowed him both to bestow ranks and privileges on other Bloods and to order punishment for any gang infractions or threats to the gang.

In 2012, Melton was tried and convicted in North Carolina state court of assault with a deadly weapon with intent to kill, inflicting serious injury, and being a violent

---

[1] Because Melton was convicted following a trial, we recount the facts in the light most favorable to the Government. *See United States v. Landersman*, 886 F.3d 393, 399 (4th Cir. 2018).

[2] Although One 8 Trey started out under the auspices of UBN, it later disaffiliated from UBN. Melton is the "Godfather" (that is, "the head") of One 8 Trey and its members continue to identify as Bloods. J.A. 255.

habitual felon. Because the jury found that Melton was a violent habitual felon, he was subject to—and ultimately sentenced to—a term of life imprisonment.

While serving this sentence at Polk Correctional Institution ("PCI") in Butner, North Carolina, Melton orchestrated a revenge kidnapping plot against his state court prosecutor and defense counsel. He used a contraband cell phone ("the Phone") to communicate with co-conspirators—fellow One 8 Trey members and their compatriots—directing them throughout the scheme's planning and execution.

In March 2014, four co-conspirators travelled to Louisiana to kidnap the sister of Melton's state defense counsel (the "Louisiana attempted kidnapping"). They surveilled the target's residence for several days, communicating with Melton throughout as he dictated who was in charge of the endeavor and suggested how to carry out the kidnapping. One night, co-conspirators jumped the fence on the target's property, but fled when house lights turned on. They eventually abandoned the enterprise without kidnapping anyone.

Early the next month, several co-conspirators did kidnap Frank Janssen, the father of Melton's state prosecutor in Wake Forest, North Carolina (the "North Carolina kidnapping"). After gaining entry to Janssen's home at gunpoint, co-conspirators restrained him, forced him into a vehicle and drove to Georgia. They held Janssen captive for several days, during which time he suffered internal and external injuries from physical attacks (which included pistol-whippings) and the conditions of his confinement.

Throughout Janssen's captivity, Melton coordinated numerous details, and after an initial effort to extort ransom money was deemed futile, Melton ordered Janssen's death.

One co-conspirator procured shovels to bury Janssen's body while others scouted a burial location, but they did not carry through with the killing. Instead, agents of the Federal Bureau of Investigation ("FBI") located the apartment where Janssen was being held, apprehended the co-conspirators, and rescued Janssen.

FBI agents thwarted the scheme through a combination of electronic and in-person investigation. They traced location and usage data for the cell phones the co-conspirators used to send ransom messages to Janssen's wife. From this data, investigators were able to pinpoint the location of a co-conspirator, who in turn led them to Janssen. In addition, FBI agents had obtained a Title III wiretap of the cell phones and recorded the conversation where Melton ordered the co-conspirators to kill Janssen.

The cell phone data also led investigators to Melton. One of the phones used by the co-conspirators during the North Carolina kidnapping had placed a single call to another cell phone number, which in turn had placed many calls to a cell phone that had been used exclusively and extensively from within PCI. What's more, investigators observed that this PCI-centered cell phone participated in the call ordering Janssen's death.

The same evening of Janssen's rescue, officers at PCI approached Melton's cell for an inmate extraction. Melton had rigged the door to stay closed with "a contraption he made from batteries and wire." Supp. J.A. 1447. One of the officers testified that as others were working on opening the door, he heard smashing sounds as if Melton was throwing something on the ground repeatedly. When the officers entered Melton's cell, they observed and recovered pieces of a cell phone.

4

FBI analysts reconstructed the device retrieved from Melton's cell and were able to identify it as the Phone used to communicate with co-conspirators during both the Louisiana attempted kidnapping and the North Carolina kidnapping. They also extracted the messages exchanged between the Phone and co-conspirators.

B.

A grand jury indicted Melton and eight co-conspirators on kidnapping and firearms charges arising from these events. Melton invoked his right to a jury trial on the following charges: (1) conspiracy to commit violations of the kidnapping statute, 18 U.S.C. § 1201(c); (2) attempted kidnapping, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1201(d) and 2; (3) kidnapping, and aiding and abetting the same, in violation of 18 U.S.C. § 1201(a) and 2; and (4) using, carrying, and brandishing a firearm during and in relation to, and possessing a firearm in furtherance of, a kidnapping, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c) and 2.[3]

The Government's case consisted of the testimony of indicted co-conspirators; law enforcement and correctional officers who had participated in the North Carolina kidnapping investigation and inmate extraction; and FBI agents who had participated in the reconstruction of the Phone, data retrieval, and wiretap recording.

The jury convicted Melton of all four charges. The district court then sentenced Melton to life imprisonment for the conspiracy, attempted kidnapping, and kidnapping convictions (to run concurrently), and to 84 months' imprisonment on the firearms

---

[3] The indictment also charged Melton with a second § 924(c) firearms charge, which the Government voluntarily dismissed prior to trial.

conviction (to run consecutively to the other convictions). In addition, the court determined that Melton's federal sentence should run consecutively to the state sentence he was already serving.

Melton noted a timely appeal, and the Court has jurisdiction pursuant to 28 U.S.C. § 1291.

II.

On appeal, Melton challenges the constitutionality of the district court's decision to allow the Government to introduce a statement he made during a pre-trial hearing on his counsel's motion to withdraw. In addition, Melton contends the district court abused its discretion in admitting several categories of evidence. Specifically, Melton argues that the district court should have excluded the evidence as unfairly prejudicial in light of what he argues was minimal probative value.

The Government responds that the district court acted appropriately in allowing all of this evidence and that any errors were harmless. In particular, it points to the testimony of Melton's co-conspirators and the evidence connecting Melton to the Phone as proof that any evidentiary errors did not affect the outcome of the trial.

We agree with the Government that if any of the claimed rulings were erroneous, they were harmless errors. Consequently, no reversible error occurred and we affirm Melton's convictions. Because Melton's challenges are reviewed under different harmless-error standards, however, we review them separately. As explained in context below, Melton's first challenge—to the pre-trial statement—implicates his constitutional

6

rights, so we review it under the stricter test for harmless constitutional error rather than under the more relaxed test applied to his second challenge, which appeals a straightforward evidentiary decision. *See Thompson v. Leeke*, 756 F.2d 314, 316 (4th Cir. 1985) (discussing the differences between the two harmless-error standards).

A.

Melton first asserts that the district court erred by admitting into evidence at trial a statement he made during a pre-trial hearing. Melton's statement occurred at the close of a hearing about defense counsel's motion to withdraw from representing him. After hearing from counsel, the district court invited Melton to offer his perspective on his relationship with counsel. Melton volunteered a number of reasons why he believed new counsel should be appointed, including counsel's alleged failure to interview potential defense witnesses. In describing his frustration with counsel, Melton mentioned the Phone, admitting, "the phone did belong to me; that's a fact." Supp. J.A. 1383. Nonetheless, Melton contended, "there were several other inmates using that phone," yet counsel had not questioned them. Supp. J.A. 1383.

At trial, and over Melton's objection, the Government introduced an audio recording of the part of Melton's pre-trial statement immediately surrounding and including his admission that the Phone belonged to him, but that others had used it, too.

On appeal, Melton claims that the district court's decision forced him to surrender his Fifth Amendment right against self-incrimination at trial as a result of having asserted his Sixth Amendment right to adequate representation during the pre-trial hearing. He claims that the introduction of the recording violates the principles expressed in *Simmons*

7

*v. United States*, 390 U.S. 377 (1967), which held that a criminal defendant's pre-trial statement at a suppression hearing could not be used at trial as evidence of his guilt, thereby protecting that defendant's ability to invoke both Fourth and Fifth Amendment rights.

For purposes of our review, we will simply assume without deciding that the admission of Melton's pre-trial statement constituted error and proceed directly to harmless-error review.[4] Even when a trial error implicates a defendant's constitutional rights, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark*, 478 U.S. 570, 579 (1986). Most such errors are subject to harmlessness review because "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)). In the context of harmless constitutional error review, the Court will conclude that an error was harmless if "the record developed at trial establishes guilt beyond a reasonable doubt." *Id.*[5] Put another way, the Court will affirm a conviction if "it is clear that a

---

[4] We expressly do not opine on the continuing vitality of *Simmons*' reasoning in light of *McGautha v. California*, 402 U.S. 183, 212 (1971), or whether *Simmons*' reasoning extends to the circumstances of Melton's case.

[5] Melton does not contend that admission of his pre-trial statement falls within one of the narrow categories of "intrinsically harmful" constitutional errors that are not subject to harmless-error review. *United States v. Poole*, 640 F.3d 114, 119 (4th Cir. 2011) (describing errors that are not subject to harmless-error review as those that are "so intrinsically harmful to the proceeding that [they] render the trial an unreliable vehicle for determining innocence or guilt" such as admission of a coerced confession, having a case adjudicated by a biased judge, or being denied completely the assistance of counsel). We agree that the error alleged here does not fall within that limited category of errors, and (Continued)

8

rational fact finder would have found [the defendant] guilty absent the error." *Poole*, 640 F.3d at 120; *see also Fahy v. Connecticut*, 375 U.S. 85, 86–87 (1963) (discussing the difference between harmless constitutional error review and sufficiency of the evidence review: "We are not concerned here with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of. The question is whether there is a reasonable probability that the evidence complained of might have contributed to the conviction."); *United States v. Garcia-Lagunas*, 835 F.3d 479, 487–88 (4th Cir. 2016) (discussing the standard).

Given the strength and volume of the other evidence against Melton, we conclude that the admission of Melton's statement did not contribute to his convictions. As such, even assuming an error occurred, any error was harmless. *See Poole*, 640 F.3d at 120. In his statement, Melton admitted that he owned the Phone. But the Government was not required to prove ownership of the Phone, only that he'd conspired to kidnap and aided and abetted the individuals who participated in the Louisiana attempted kidnapping and North Carolina kidnapping (and its related firearm charge). Other trial evidence directly and conclusively demonstrated Melton's culpability.

First, several of Melton's co-conspirators testified that they communicated with him on the Phone throughout the charged events and acted at his direction. They testified that Melton initiated the scheme, instructed them on how to proceed throughout the

instead "the impact of the [admission of Melton's statement" can be evaluated in light of the evidence which was properly admitted." *See United States v. Blevins*, 960 F.2d 1252, 1262 (4th Cir. 1992).

9

Louisiana attempted kidnapping and North Carolina kidnapping, and ordered Janssen's death. The co-conspirators identified specific text messages sent to and from Melton on the Phone about the scheme, including messages that referred to the sender or recipient by nicknames that Melton used.

Second, the Government introduced evidence corroborating that Melton used the Phone the final evening of Janssen's kidnapping. A correctional officer who was part of the team that entered Melton's cell that night testified that Melton had "rigged the door with a contraption he made from batteries and wire" to delay their entry. Supp. J.A. 1447. During that delay, the officer heard an object being "smashed to the ground" multiple times, and upon entry, he observed the pieces of the Phone scattered on the cell's floor. Supp. J.A. 1449.

Third, data about and extracted from the Phone confirmed that it had been used exclusively from PCI and to communicate with the co-conspirators hundreds of times during the relevant timeframe. Indeed, the Phone had been used twenty-seven times to communicate with co-conspirators in the four hours immediately prior to its retrieval from Melton's cell. And data extracted from the Phone confirmed messages about the kidnapping scheme sent to or by an individual identified by Melton's nicknames.

Fourth, during the recorded conversation the same evening the Phone was retrieved from Melton's cell, Melton—whose voice was identified by Melton's co-conspirators—instructed the co-conspirators to kill Janssen.

While this evidence was by no means exhaustive of the Government's evidence against Melton, it demonstrates why the admission of his pre-trial statement was

harmless. The Government had much stronger and direct evidence of Melton's role in the charged offenses. In comparison, a generalized statement admitting ownership, immediately followed by a reference to other prisoners using the Phone, does not call into question Melton's guilt beyond a reasonable doubt. As such, any error was harmless.

B.

We next consider Melton's argument that the district court abused its discretion to admit evidence under Federal Rule of Evidence 404(b). He challenges evidence admitted through a number of witnesses relating to his (1) founding role and status in the UBN and One 8 Trey; (2) participation in the 2011 North Carolina shooting that led to his state life sentence; (3) classification as a security threat during pre-trial detention in state court and his cell phone infraction during that time; and (4) orchestration of additional uncharged conduct with some of the same indicted co-conspirators while he was serving his state sentence at PCI.

We review a district court's decision to admit evidence for abuse of discretion, but we will reverse a conviction only when an evidentiary error harmed the defendant. Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *Landersman*, 886 F.3d at 413. In this context, harmless-error review means that we will reverse only if the judgment was "substantially swayed by the error." *United States v. Johnson*, 617 F.3d 286, 295 (4th Cir. 2010) (internal citation omitted); *see also Kotteakos v. United States*, 328 U.S. 750, 776 (1946) (defining this standard as evidentiary decisions that did not have a "substantial and injurious effect or influence in determining the jury's verdict"). "Often in criminal cases

11

where there is a significant amount of evidence which inculpates a defendant independent of the erroneous testimony, the error is considered harmless." *Johnson*, 617 F.3d at 295 (internal citation omitted). Here, too, the Court's inquiry is not simply "whether there was enough to support the result, apart from . . . the error. It is rather, even so, whether the error itself had substantial influence." *Kotteakos*, 328 U.S. at 765.

Even assuming, but not deciding, that all of the evidence Melton challenges was wrongly introduced, we readily conclude that any error was harmless because of the strength of the other, independent inculpatory evidence against him. As our prior summary of the record reflects, the jury had ample evidence on which to base its verdict. The Government presented a commanding case against Melton that demonstrated that while he was incarcerated at PCI, he conspired to commit kidnapping and aided and abetted the Louisiana attempted kidnapping and the North Carolina kidnapping (as well as the related firearm charge). *See United States v. Burgos*, 94 F.3d 849, 857–62 (4th Cir. 1996) (describing requisite proof of a conspiracy); *United States v. Pino*, 608 F.2d. 1001, 1003 (4th Cir. 1979) (describing requisite proof of aiding and abetting an offense). And, at bottom, because the Government satisfied the more stringent standard of showing the harmlessness of possible constitutional error, it readily satisfies the less stringent standard for showing the harmlessness of possible non-constitutional evidentiary errors. We are thus confident that all of the challenged evidentiary decisions were harmless.

## III.

For the reasons stated, we affirm Melton's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.[6]

*AFFIRMED*

---

[6] After filing the briefs in this appeal, Melton's counsel moved to withdraw from representation. We grant that motion.